# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| BRANDI JO KENNEBECK, | |
| Petitioner, | No. 11-CV-4063-DEO |
| v. | Memorandum and Opinion Order |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

_____

## I. INTRODUCTION AND BACKGROUND

This matter is before the Court on Brandi Jo Kennebeck's (Petitioner) 28 U.S.C. § 2255 petition. The Petition challenges her sentence imposed by this Court on September 21, 2010. Docket No. 6.

On November 1, 2008, police executed a search warrant at the residence of Scott Hare and discovered a make-shift methamphetamine laboratory. Docket 11-6, 7. Mr. Hare told police Petitioner was one of several individuals who aided him in purchasing products with pseudoephedrine, a key ingredient for cooking methamphetamine. Id. He also told police that Petitioner, once the pseudoephedrine was collected, aided him in cooking "methamphetamine at least 15 times . . . ." Id. On December 1, 2008, police executed a search warrant at the Petitioner's and her roommate's residence. Police seized drug

paraphernalia and numerous items used to manufacture methamphetamine. 09-CR-04038-DEO, Docket No. 179, 8. On November 2, 2009, Petitioner was convicted of Possession of a Drug Precursor in Cherokee County, Iowa, Case Number FECR023565. Id. On March 11, 2009, police executed another search warrant at a residence where Petitioner was staying. Additional drug paraphernalia and multiple firearms were seized. Id. Police also discovered that pseudoephedrine logs, records legally required to be kept by stores, from September 26 to October 21, 2008, indicated Petitioner purchased 8,880 grams of Pseudoephedrine. Id. at 9. Subsequently, on October 19, 2009, Petitioner was convicted of Violation of Pseudoephedrine Restrictions in Cherokee County Iowa, Case Number SRCR-23564. Id.

On December 15, 2008, and again on March 11, 2009, Petitioner signed proffer agreements and then discussed her criminal activities and the activities of others with police. Docket Nos. 11-1 and 11-3. Both proffer agreements provide that information shared during the "proffer session may not later be used against" Petitioner "as direct evidence in any trial" but may be used for sentencing purposes. Id.

On January 27, 2010, a Federal Grand Jury indicted Petitioner and three Co-Defendants for: Count 1, conspiracy to manufacture methamphetamine; Count 2, interstate travel in aid of racketeering; and Count 3, manufacturing methamphetamine. 09-CR-04038-DEO, Docket No. 75-2. On June 3, 2010, Defendant entered into a plea agreement with the government in which she pled guilty to counts 1 and 3. Docket No. 11-6.

Within the stipulation of facts portion of the plea agreement, Petitioner admitted, through initialing each numbered paragraph therein, that she had "conspired to manufacture and distribute 500 grams or more of methamphetamine mixture, which contained at least 50 grams or more of actual (pure) methamphetamine . . . within 1,000 feet of a school" and actually "cooked methamphetamine with Scott Hare about 15 times." Docket No. 11-6, 6. The plea agreement also included a waiver of Petitioner's right to appeal her conviction directly or via a 28 U.S.C. § 2255 petition, with the following exceptions: "(1) if the sentence is not in accordance with [the] plea agreement; (2) if the sentence imposed exceeds the maximum statutory penalty; and (3) if the sentence is unconstitutionally defective." Id. at 16.

The Presentence Investigation Report (PSIR) indicates Petitioner's guideline range was 120 to 121 months with a statutory mandatory minimum of 120 months. 09-CR-04038-DEO, Docket No. 179, 22. Though there was little room for this Court to adjust Petitioner's sentence, on August 31, 2010, Attorney Conrad Douglas, Petitioner's criminal defense attorney, filed a sentencing memorandum in anticipation of the Government filing a substantial assistance motion. 09-CR-04038-DEO, Docket No. 184. At the sentencing hearing, the Government did in fact motion the Court to go below the statutory mandatory minimum due to substantial assistance. This Court granted Petitioner a 40% reduction in sentence, giving her a total term of 72 months imprisonment. 09-CR-04038-DEO, Docket No. 187.

Within her § 2255 petition, Petitioner makes the following claims as grounds for relief: (1) prosecutorial misconduct, (2) ineffective assistance of counsel for failure to raise the issue of prosecutorial misconduct, (3) ineffective assistance of counsel for failing to properly instruct Petitioner regarding a provision in the plea agreement, (4) ineffective assistance of counsel for failure to file a direct appeal upon Petitioner's request, and (5)

ineffective assistance of counsel for failure to conduct proper pre-trial discovery.

## II.  LAW AND ANALYSIS

28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that [1] the sentence was imposed in violation of the Constitution or laws of the United States, or that [2] the court was without jurisdiction to impose such sentence, or that [3] the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

### A.  Prosecutorial Misconduct

The focus of a prosecutorial misconduct claim is the alleged conduct's effect on the overall fairness of the criminal proceedings. Smith v. Phillips, 455 U.S. 209, 219 (1982). Petitioner makes two sub-claims: (1) the federal prosecutor used information from Petitioner's state and federal proffers, which, in accordance with her agreement with the Government, were not to be used against her in any criminal proceedings; and (2) the decision to prosecute Petitioner violated the Government's Petite policy. Docket Nos. 6-1, 4 and Docket No. 22.

### 1. **Use of State and Federal Proffer Information**

The Government contends Petitioner's claim "is barred by the [waiver] provision in the plea agreement." Docket No. 11, 5. As previously noted, the waiver provision provides for three exceptions: (1) the sentence is not in accordance with the plea agreement, (2) the sentence imposed exceeds the maximum statutory penalty, or (3) the sentence imposed is constitutionally defective. Given the limited breadth of these exceptions, it appears to be a valid bar to claims of prosecutorial misconduct, unless the misconduct alleged bears directly upon the sentence imposed. Petitioner does not claim there is anything unlawful or unconstitutional about her sentence per se. Thus, if the waiver provision is valid, Petitioner is not entitled to relief.

In <u>United States v. Andis</u>, the Eighth Circuit ruled that "a defendant generally can waive appellate rights" and may do so within a plea agreement. 333 F.3d 886, 888-89 (8th Cir. 2003). The <u>Andis</u> Court recognized two exceptions to the general rule: (1) the waiver was not knowing and/or voluntary; and (2) giving effect to the waiver would result in a miscarriage of justice. <u>Id.</u> at 890.

As to the first exception, Petitioner alleges her waiver was not knowing and voluntary. In support of her argument, she notes that at the plea hearing Attorney Douglas "admitted that he didn't do a good job of instructing her regarding the waiver." Docket No. 6-1, 5. Specifically, upon being questioned by the Court as to whether he had discussed the waiver with Petitioner, Attorney Douglas stated,

> I probably was remiss on this point. Ms. Kennebeck didn't ask any questions about the waiver. I should have been a little bit more proactive and checked to make sure that she understood . . . If I were to do it again, I think I would probably make sure she understood what was involved there.

Docket No. 6-2, 24.

While this quote, alone, may militate toward the conclusion that Petitioner was not properly informed about the nature of the waiver, when read in context of the entire plea hearing, it is clear Attorney Douglas was merely reflecting this Court's general and long held reservations regarding the propriety of appeal and post-conviction relief waivers. First, the quote Petitioner provides is subject to creative editing and omits two important aspects of Attorney Douglas' comments: (1) Attorney Douglas noted Petitioner initialed the waiver provision indicating she acknowledged she read, fully

understood, and agreed to it; and (2) Attorney Douglas stated he thought Petitioner understood the waiver prior to initialing it, though, in the future, he would increase his efforts in order to "make sure." Docket No. 6-2, 24.

In addition, at the plea hearing, Attorney Douglas indicated Petitioner was heavily involved in negotiations over the plea agreement. Attorney Douglas also stated that at Petitioner and his final meeting regarding the plea agreement, Petitioner indicated she wanted to read the agreement to herself and would ask questions if there was something she did not understand. Docket No. 6-2, 5. According to Attorney Douglas, though she asked numerous questions related to other provisions of the agreement, she did not ask any questions in relation to her waiver of her right to appeal or file for post-conviction relief. Id.

Finally, at the plea hearing, this Court asked Petitioner if she had the terms of the plea agreement "pretty well in mind." She responded, "Yes, sir." Docket No. 6-2, 5. This Court continued on to ask Petitioner whether she needed any aspects of the plea agreement explained further, to which she answered, "No, sir." This Court then proceeded to discuss the waiver portion of the plea agreement at length. Docket No. 6-

2, 7-28. This Court's discussion was motivated, in part, due to this Court's reservations about the Eighth Circuit's determination to allow waivers, and the U.S. Attorney's determination to engage in the practice; and, in part, to assure that Petitioner "knowingly and voluntarily" entered into the waiver. Docket No. 6-2, 24. Though this Court did not, after this lengthy discussion, ask Petitioner whether she understood the provision, this discussion no doubt fortified and crystalized the understanding she had already admitted to.

Since Petitioner's criminal proceeding records indicate she properly understood the waiver provision; and, since she was given numerous opportunities to ask questions about anything she did not understand, this Court concludes she had the requisite knowledge to waive her right to appeal and apply for post-conviction relief.

Even though Petitioner entered into the waiver knowingly, this Court, under the Andis standard, must still determine whether enforcing it would constitute a miscarriage of justice. 333 F.3d 886, 891. While the Andis Court did not define what constitutes a miscarriage of justice, they did provide examples: (1) an illegal sentence, (2) a sentence in violation of a plea agreement, (3) a sentence based on

constitutionally impermissible factors such as race, and/or (4) criminal proceedings infected with ineffective assistance of counsel. <u>Id.</u>

None of these exceptions apply here. Still, the <u>Andis</u> Court made it clear that they did not make "an exhaustive list of the circumstances that might constitute a miscarriage of justice." So, the question remains as to whether prosecutorial misconduct and, more specifically, use of proffer information in violation of a proffer agreement, constitutes a miscarriage of justice. 333 F.3d 886, 891. After serious consideration, this Court is convinced that certain types of prosecutorial misconduct, such as the government withholding exculpatory evidence, would almost certainly constitute a miscarriage of justice. However, the Government's use of proffer evidence in violation of an agreement does not rise to the level of a miscarriage of justice. Though such information is used inappropriately, it is, presuming a suspect would not lie about their past crimes, the truth; any sentence imposed in relation thereto is not worthy of being labeled a miscarriage of justice.

Even assuming the Government's use of proffer information in violation of an agreement with a defendant were to

constitute a miscarriage of justice, Petitioner's claim lacks merit.  As previously noted, Petitioner claims the U.S. Attorney's Office used both State and Federal proffer information in violation of agreements made incident to Petitioner's proffers.  First, State prosecutors are not agents of the U.S. Attorney's Office; and, as such, lack the requisite authority to bind the U.S. Attorney to an agreement. In <u>United States v. Cleveringa</u>, this Court ruled that even the Federal Deposit Insurance Corporation (FDIC), which, like the U.S. Attorney's Office, is part of the federal executive branch, lacked the authority to bind the U.S. Attorney's Office.  08-CR-4086-DEO, Docket No. 25.  Thus, if the U.S. Attorney uses information in violation of a State proffer agreement, that agreement has not been violated for purposes of federal proceedings.  Second, as previously noted, Petitioner entered into two proffer agreements with the U.S. Attorney's Office.  Both agreements provide that "incriminating statements made . . . during the informal proffer session **may not** later be used . . . as direct evidence in any **trial**, except" at sentencing.  Docket No. 11-1, 1-2 and Docket No. 11-3, 1-2 (emphasis added).  In this case, the information obtained during the proffer was not used for trial

purposes but was used at sentencing.

Therefore, Petitioner's claim is denied.  Not only is it barred by her agreement to waive her right to bring a post-conviction relief claim, but it lacks merit.  That is, the Government did not violate the proffer agreements.

## 2.  Violation of Government's Petite Policy

The Petite policy is an internal Department of Justice policy which "states that a federal prosecution should not be based on substantially the same acts as were the basis for a prior prosecution unless there is a compelling federal interest." United States v. Larsen, 427 F.3d 1091, 1094 (8th Cir. 2005) (citing United States v. Johnson, 169 F.3d 1092, 1095 (8th Cir. 1999)).  The Eighth Circuit has ruled that the Petite policy "confers no substantive rights on a criminal defendant," and, therefore, it does not provide a basis for relief "even if the government" acts "contrary to it . . . ." Id. (citing United States v. Leathers, 354 F.3d 955, 962 fn. 5 (8th Cir. 2004)).

In addition, even if a violation of the Petite policy were grounds for relief, Petitioner offers no evidence indicating the Petite policy was actually violated.  In fact, Petitioner admits that she received a letter from Assistant

United States Attorney Timothy Duax indicating that the procedure for the Petite policy was followed. Docket No. 22, 3. In her brief on Petite policy, Petitioner requests additional discovery; but, as noted in the Government's response brief, since the Petite policy does not confer substantive rights on a defendant, it is not properly subject to discovery. Docket No. 28, 3-4 (citing <u>United States v. Sellers</u>, 603 F.2d 53, 57 (8th Cir. 1979)).

Therefore, Petitioner has not met her burden of showing that the Government's use of the proffer agreements or the Government's observance, or lack thereof, of the Petite policy constitute grounds for relief.

## III.  INEFFECTIVE ASSISTANCE OF COUNSEL

"[T]he right to counsel is the right to effective assistance of counsel." <u>McMann v. Richardson</u>, 397 U.S. 759, 771 (1970). The Fourteenth Amendment Due Process Clause guarantees the right to a fair trial. <u>Strickland v. Washington</u>, 466 U.S. 668, 684-85 (1984). The Sixth Amendment guarantees the right to assistance of counsel. U.S. Const. Amend. VI. In <u>Strickland</u>, the Supreme Court elaborated on the relationship between the Fourteenth and Sixth Amendments:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's

> conduct so undermined the proper
> functioning of the adversarial process that
> the trial cannot be relied on as having
> produced a just result.

466 U.S. at 686.

The moving party must demonstrate two components to establish ineffective assistance of counsel:  (1) counsel's conduct was deficient, and (2) prejudice.  466 U.S. at 687. Counsel's conduct is deficient when it is unreasonable "under prevailing professional norms."  Padilla v. Kentucky, 130 S. Ct. 1473, 1481 (2010) (quoting Strickland, 466 U.S. at 688). Counsel's conduct is prejudicial if "counsel's errors" are so serious that they "deprive the defendant of a fair trial . . . ."  466 U.S. at 687.  In other words, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  A reasonable probability does not require a different outcome be proven by a "preponderance of the evidence" but does require "a probability sufficient to undermine confidence in the outcome."  Id.

**A.  Whether Counsel was Ineffective for Failing to Raise the Issue of Prosecutorial Misconduct**

As discussed earlier in this Memorandum and Opinion

14

Order, Petitioner has failed to demonstrate that there was any prosecutorial misconduct.  As such, Attorney Douglas' failure to argue prosecutorial misconduct cannot be deemed deficient and was not prejudicial.

**B.    Whether Counsel was Ineffective for Failure to Explain the Waiver of Petitioner's Right to Appeal Within the Plea Agreement**

As previously noted, Attorney Douglas did meet and go over the plea agreement with Petitioner.  More specifically, per Petitioner's request, Attorney Douglas watched as Petitioner read the plea agreement and addressed and answered Petitioner's questions and concerns.  In this Court's judgment, this was a sufficient method for reviewing the plea agreement and did not constitute deficient representation.  If a client indicates they understand an aspect of an agreement they are entering into and initials each paragraph therein, it would be too high a standard of conduct to require an attorney to explain it regardless.

**C.    Whether Counsel was Ineffective for Failing to File an Appeal**

Petitioner claims Attorney Douglas "was ineffective for failing to file a direct appeal after being asked to do so."

Docket No. 6-1,6. "Where an attorney disregards specific instructions from a defendant to file a notice of appeal, he 'acts in a manner that is professionally unreasonable.'" Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) (quoting Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)). Furthermore, in "such a case, prejudice is presumed because the defendant has forfeited his right to an appellate proceeding as a result of his counsel's error." Id. at 964 (citing 528 U.S. at 483-84).

It is unclear whether Attorney Douglas did, in fact, ignore Petitioner's request for a direct appeal. However, where there is a valid waiver of appeal in a plea agreement, trial counsel, in most instances, will not have a duty to file a notice of appeal when requested.[1] As noted by the Eighth Circuit in Andis, the primary benefits of an appeal waiver are the promotion of judicial efficiency and finality. These benefits would certainly be diminished if trial counsel were duty bound to file an appeal regardless of a valid waiver. 333 F.3d 886, 889 (citations omitted).

---

[1] Situations in which trial counsel will likely still have a duty to appeal, despite an appeal waiver, include situations where the claim to be asserted falls within an exception provided for in the agreement, the waiver provision was not entered into knowingly and/or voluntarily, or the matter to be complained of constitutes a miscarriage of justice.

In this instance, Attorney Douglas noted in his affidavit provided to the Court that filing a notice of "appeal would have abrogated the agreement and lost a significant benefit to the Petitioner at no discernible gain." Docket No. 11-5. If filing a notice of appeal jeopardizes a favorable sentence obtained through a substantial assistance agreement with the Government, as here, the act of filing, not the act of failing to file, is what would constitute deficient representation.

In addition, even assuming Attorney Douglas had a duty to file a notice of appeal upon Petitioner's request, Petitioner has not met her burden of proof to show such a request was made. At the habeas hearing, Attorney Douglas could not remember whether a request for appeal was made; though, he was sure it was not insisted upon. Petitioner offers this Court no evidence indicating she did, in fact, request he file a notice of appeal.

**D. Whether Counsel was Ineffective for Failure to Conduct Pre-trial Discovery**

"Petitioner asserts that her trial counsel was ineffective for failing to conduct proper pretrial discovery." Docket No. 6-1, 7. Specifically, Petitioner alleges that trial counsel had taped conversations with a potential witness

for her defense. This Court is frankly confused by Petitioner's argument. Attorney Douglas' obtainment of taped conversations with a witness for his client's defense is not an example of a failure to conduct proper pretrial discovery but, on the contrary, an example of his proper exercise of pretrial discovery. In his affidavit to this Court, Attorney Douglas notes:

> At my request acting upon Petitioner's suggestion, Jeff Miller of LBJ Investigations interviewed Justin Stewart, an acquaintance and sometime companion of the Petitioner. This interview took place on March 26, 2010. I shared the results of this interview with the Petitioner. Although Mr. Stewart claimed possession of various items seized from the house where the Petitioner was arrested, there was additional evidence (both material and in the form of statements) supporting the Petitioner's complicity in the conspiracy charged against her. During negotiations with the government, I made it clear that the Petitioner was prepared to go to trial should we not be able to reach a satisfactory agreement. . . My ability to take a strong position during negotiations was supported in part by the interview with Justin Stewart.

Docket No. 11-5, 2.

As previously noted, Petitioner later voluntarily and knowingly entered into a favorable plea agreement and received a substantial reduction in sentence for cooperation. As such,

rather than indicating any deficiency in representation, Attorney Douglas' efforts during discovery are indicative of effective representation.

## IV. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2255(c)(2), a district court may issue a certificate of appealability which will allow a petitioner to appeal the denial of his § 2255 petition. The district court should only issue a certificate of appealability if "'the applicant has made a substantial showing of the denial of a constitutional right.'" Slack v. McDaniel, 529 U.S. 473, 483 (2000) (citing 28 U.S.C. § 2253(c)). In Slack, the Supreme Court defined "substantial showing" as follows:

> To obtain a [certificate of appealability] under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve the encouragement to proceed further.'" Barefoot, 463 U.S., at 893, and n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (sum[ming] up the "substantial showing" standard).

Slack, 529 U.S. at 483-84.

After thoroughly considering the record in this matter, this Court is persuaded that "reasonable jurists could debate

whether . . . the petition should have been resolved in a different manner." <u>Slack</u>, 529 U.S. at 483-84. This Court's decisions in this case were judgment calls, and this Court is of the opinion that all its judgment calls should be reviewable. As precedent in <u>Tiedeman v. Benson</u> requires, a certificate of appealability is granted in relation to each of Petitioner's claims. 122 F.3d 518, 520 (8th Cir. 1997).

**V. CONCLUSION**

**In the view of this Court, Ms. Kennebeck fails to state a claim sufficient to provide relief under 28 U.S.C. § 2255; and her motion to vacate, set aside, or correct her sentence is denied. The Clerk of Court shall issue a certificate of appealability as provided above.**

**IT IS SO ORDERED** this 2nd day of May, 2012.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa